# THE MISSISSIPPI LINK

KEEPERS OF THE KNOWLEDGE FOR PEOPLE WHO SPEAK THE TRUTH SINCE 1993

www.mississippilink.com

VOL. 20, NO. 40     JULY 31 - AUGUST 6, 2014     50¢

## Congratulations to winners of ...
### The 36th Mississippi Gospel Music Awards & The 40th Jackson Music Awards

## First woman named director of Jackson's Public Works Department

*Kishia L. Powell's city council confirmation passes 5 yeas 1 abstention*

By Ayesha K. Mustafaa
*Editor*

The Jackson City Council held a confirmation hearing in the public council meeting Tuesday, July 29, accepting with five yeas and one abstention Mayor Tony Yarber's selection of Kishia L. Powell, P.E., as the director of the city's Public Works Department., making her the first woman to ever hold the position. Ward 3 Councilwoman LaRita Cooper-Stokes was absent.

Yarber has followed through on his promises to exemplify Jackson as the "bold new city," reaching beyond the local area to find his new director for one of the *most important departments* of the city.

The city describes the mission of its Public Works Department as "to maintain and enhance the capital city's infrastructure with dependable, professional and dedicated employees.... Its divisions include engineering, facility management, infrastructure management, solid waste, water and sewer and vehicle



Powell    PHOTO BY JAY JOHNSON

maintenance."

The multitude of complaints about broken water pipelines, crumbling streets and other issues with an aging infrastructure will be the responsibility of Powell.

Powell has 16 years of experience and expertise in *sustainable infrastructure* management and utility operations. She's served mu-

Powell
Continued on page 2

## James Brown biopic "Get On Up!" filmed in Mississippi premieres in Jackson area

By Stephanie R. Jones
*Contributing Writer*

Movie director Tate Taylor once again brought the glitz of Hollywood to Mississippi with a special premiere showing of his latest project, the James Brown biopic "Get On Up!"

About 575 attended the ticketed Sunday show at Malco Grandview in Madison, Miss., Sunday, July 27, 2014, to see and greet movie stars as they walked the red carpet, leading up to a nationwide opening of the film on Friday, August 1.

The charity fundraiser took in $30,000 for Mission Mississippi, an organization that promotes racial reconciliation through the teachings of Christ.

Nettie Winters, president of Mission Mississippi, said the film helps to change the message of Mississippi that normally is filtered throughout the world. "There is no bigger event in the world than being here today," Winters said. "It's a great story and Mississippi is on the map."

The film also premiered in



Gov. Phil Bryant with wife Deborah, Tate Taylor, director of Get On Up! and Chadwick Boseman who portrays James Brown in the movie are all smiles at the movie premiere.    PHOTO BY JAY JOHNSON

New York, but because it was filmed mostly in Jackson and Natchez, Miss., Taylor, a Mississippi native, did the same here.

Gov. Phil Bryant was on hand to welcome the cast and crew back to the city and tout the economic impact Taylor's films (he also director "The Help," which was filmed in the state) have had on the state. Bryant referred to Taylor as "our visionary."

Appearing with Taylor was Chadwick Boseman, who portrays James Brown in the movie. Others on the carpet were Mississippians including twins Jordan and Jamarion Scott, 7, who played a young Brown; 14-year-old Alvin Edney II, who played Brown's son Teddy; and 7-year-old McKenzie Matthews, who played Brown's young daughter. Jaclyn Bethany, a graduate of St. Andrews Episcopal School in Ridgeland, also had a supporting role.

Taylor said this premiere was just as exciting as his first for "The Help."

Boseman said "Get Up On!" was "the film of a lifetime. It would have been a big mistake

Get on up
Continued on page 4

## The Tougaloo 9 featured in "Risking Everything: A Freedom Summer Exhibit for Students"

By Ayesha K. Mustafaa
*Editor*

The Eudora Welty Library, 300 N. State St., in downtown Jackson, was the venue for the Jackson Hinds Library System's reception for The Wisconsin Historical Society traveling exhibit, themed "Risking Everything: A Freedom Summer Exhibit for Students."

The reception and exhibit featured a ceremony honoring the Tougaloo 9, a group of Tougaloo College students, whose March 27, 1961 sit-in led to the desegregation of the Jackson Municipal Library, which was across the street from the current Eudora Welty Library.

The ceremony included a dramatic reenactment of the Tougaloo 9's 1961 sit-in. It closed with the presentation of nine medallions honoring the Tougaloo 9.

Two of the original Tougaloo 9 - Alfred L. Cook Sr. of Flint,

### Photo of the Week
### Happy Birthday Councilman Charles Tillman
Senior Statesman



Portrait of Tillman as acting mayor and birthday song presented during city council meeting July 29.    PHOTO BY JAY JOHNSON



Alfred Cook (right) one of the original Tougaloo 9 traveled from Flint, Mich. to witness the exhibit ceremony with his grandchildren, Jessie Cook and Imani Hill.    PHOTOS BY AYESHA K. MUSTAFAA

Mich., and James C. Bradford of Jackson - were present to receive the medallions presented by Patty Furr, executive director of the Jackson Hinds Library System. Students from the library staff played the roles of each of the Tougaloo 9. The reenactment was directed by Charlotte Moman, assistant director of public services.

Cook drove from Michigan to attend the exhibit, joined by his grandchildren, Imani Hill, 12, and Jessie Cook, 24. Jessie

Tougaloo 9
Continued on page 4

---

**Inside**

- Mayor Tony Yarber announces 2014 back to school celebration and giveaway — Page 8
- Phi Beta Sigma Fraternity Inc. celebrates centennial — Page 3
- Economic Development Authority officers take oaths of office — Page 2

Share this issue with a friend by mailing it to:
_____
_____
_____

# Economic Development Authority officers take oaths of office

By Jackie Hampton
*Publisher*

The Hinds County Economic Development Authority held its regular Board of Trustees meeting Wednesday, July 30, 2014 at 11:30 a.m. The luncheon meeting was held at the Capital Club of Jackson and was open to the public.

Ed Johnson presided over the meeting. Johnson, who formerly was vice president of the board, was filling the unexpired term of Van Aubrey Evans, who passed away June 12 after a long battle with Multiple Myeloma.

The first order of business was a report from the nominating committee regarding the officers for the fiscal year 2014-2015.

Leroy Walker stated the committee was unanimously recommending Ed Johnson to serve as president, Joe Rooks as vice president and Louis Wright as secretary-treasurer. The board unanimously voted to accept the committee's recommendations.

The new officers took the oath of office from Blake Wallace, executive director of the Hinds County Economic Development Authority.

After taking the oath John-


Hinds Co. Economic Development Authority Board of Trustees luncheon at the Captial Club of Jackson
PHOTOS BY JACKIE HAMPTON

son said he would serve as president by being transparent, accountable and accessible.

Rooks stated he was honored to be a part of the organization, and as vice president, he too would be transparent and accountable. Rooks, being a new member of the board, said he would rely on Walker and others to help him through the process.

Wright said, "I am honored to serve as secretary-treasurer and will do my best to carry out the duties of the office in order to move Hinds County forward."

Members of the nominating committee include Mary White, Mike Daly and Leroy Walker, chairman.

L-R Louis Wright, Joe Rooks and Ed Johnson taking oath of office

## Powell
Continued from page 1

nicipal clients across the U.S. and London, England.

"The expertise Ms. Powell brings to Jackson raises the bar in terms of expectations set for the Public Works Department and the services provided to our citizens," Yarber said.

"Ms. Powell has set herself apart in a male-dominated profession. Her selection as public works director is one of the bold moves we're making in the Bold New City as we commit to a comprehensive infrastructure improvement plan."

Ward 7 Councilwoman Margaret Barrett-Simon raised concern over the hike in salary proposed for Powell, which will make her the highest paid city employee - more than the mayor. To the inquiry, Powell said that coming from the private sector to accept this position she will be taking a pay cut. Regarding the morale of the department, she said she will work to see that all employees are compensated according to their positions of responsibilities.

Yarber said he has no problem with Powell earning more than him. He added that the increase in salary does have precedence in the city's history with other departments. Powell's salary will go from a pay rating of 37 to 54.

In 2008, Powell was named head of the Bureau of Water and Wastewater for the City of Baltimore, serving 1.8 million customers in the Baltimore metropolitan region and providing oversight for 1,900 employees in seven divisions.

She was responsible for administration and operations of the Bureau, including the development and implementation of the utility's $2.2 billion capital improvement program; technical direction for over $1 billion in active design and construction; regulatory negotiations; and command of large-scale water emergencies.

She currently works with AMEC, one of the world's leading engineering, project management and consultancy companies, where she is the business development lead for the Chesapeake Bay Region. She assisted in increasing the firm's market share in stormwater program management and water resources engineering engagements.

During her career, she worked in the United Kingdom, including as lead engineer for detailed design and construction of a flooding alleviation scheme to comply with the Thames Water AMP4 program in London.

Powell said she's excited about the opportunity to serve the citizens of Jackson. "Where the Mayor has cast a vision for the City of Jackson, part of my role as public works director will be to align the department with the policy initiatives established for the administration," she said.

"We'll do this by initiating best practices, becoming fiscally fit, improving service delivery, right-sizing our operation, becoming more efficient, prioritizing infrastructure improvements and sustainably managing our infrastructure assets, as well as building our internal capacity to do work."

Powell thanked her par-

ents during her confirmation hearing, saying, "They have empowered me to live a life of consequence, consciously choosing to devote part of my life to something beyond myself."

Powell is a licensed professional engineer in Maryland, Virginia and the District of Columbia. She holds a Bachelor of Science degree in civil engineering from Morgan State University's Clarence M. Mitchell Jr. School of Engineering.

*To hear the July 29 city council meeting where Powell was confirmed, go to www.city.jackson.ms.us/citycouncil*







BlueCross BlueShield
of Mississippi

It's good to be Blue.

www.bcbsms.com

REACH NEW HEIGHTS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

J.W., A MINOR, BY AND THROUGH AMANDA WILLIAMS,
GUARDIAN AND NEXT FRIEND,                                            **PLAINTIFF**

VS                                           CASE NUMBER 3:21-cv-00663-CWR-LGI

THE CITY OF JACKSON, ET AL.                                        **DEFENDANTS**

### JERRIOT SMASH'S MEMORANDUM IN SUPPORT OF MOTION
### FOR JUDGMENT ON THE PLEADINGS AND/OR QUALIFIED IMMUNITY

Plaintiff brings two § 1983 claims against Jerriot Smash in his individual capacity. But, Plaintiff fails to allege Smash participated in any of the conduct giving rise to those claims. In fact, Smash is not mentioned in the "Introduction" or "Statement of Facts" sections of the Amended Complaint. *See* Am. Compl. [Doc. 51] at 2-9, 21-77. That is noteworthy because those are the only sections in which Plaintiff makes factual allegations. Plaintiff has not stated a § 1983 claim against Smash individually.

Additionally, and for the reasons stated in the City of Jackson's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. __], which Smash incorporates by reference, Plaintiff's state-created danger claim fails as a matter of law.

Last, and for the reasons set forth in Tony Yarber's and Kisha Powell's Motion for Qualified Immunity and to Dismiss and Memorandum in Support [Docs. __], and Chokwe A. Lumumba's and Robert Miller's Motion for Qualified Immunity and to Dismiss and Memorandum in Support [Docs. __], all of which Smash incorporates by reference—including the qualified-immunity arguments—Plaintiff's bodily-integrity claim fails to state a claim against Smash because he too is entitled to qualified immunity.

#100382666v2                                           1

## RELEVANT FACTUAL ALLEGATIONS

Smash is identified in the Amended Complaint in the first un-numbered paragraph as a defendant and "former Jackson Public Works Director." Am. Compl. [Doc. 51] at 1. He is mentioned a second time in the "Jurisdiction" section, where Plaintiff asserts—in conclusory terms—Smash is subject to the jurisdiction of this Court because "the acts and omissions giving rise to Plaintiff's claims took place in the State of Mississippi." *Id.* at 11 (¶ 50). Smash is next mentioned in the "Parties" section, in which Plaintiff identifies him as the "Interim Public Works Director for Jackson from approximately May 2016 to October 2017." *Id.* at 16 (¶ 65). Smash is not mentioned again in an averment until Count III, where Plaintiff claims—again, in conclusory terms—Smash did not exercise reasonable care "to perform a duty owed to Plaintiff." *See id.* at 81-86 (¶¶ 394-412).

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of a party's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63, 570 (2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.2d 631, 634 (5th Cir. 2014); *Petersen Indus., Inc. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13338, *3 (S.D. Miss. Feb. 9, 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 (quoting *Iqbal*, 556 U.S. at 678).

The facial plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3 ("A plaintiff's complaint must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).

The legal standard is the same for dismissal motions filed under Rule 12(c). *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010); *Atwood v. Tullos*, 312 F. Supp. 3d 553, 559-60 (S.D. Miss. 2018) ("In deciding a 12(c) motion, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.") (internal quotations omitted).

The standard for a qualified immunity motion brought at the pleadings stage is the same as any other Rule 12(b)(6) or 12(c) motion, save for one difference: the burden is on the *plaintiff*, not the movant, to demonstrate the inapplicability of the defense. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

**II.   Plaintiff Has Not Pleaded Smash Violated His or Her Constitutional Rights.**

Smash is entitled to qualified immunity because Plaintiff fails to identify even one act or omission by Smash that led to Plaintiff's alleged injuries. *See Williams v. Barbour*, Civ. Action No. 3:09CV179-DPJ-JCS, 2009 U.S. Dist. LEXIS 98114, *7 (S.D. Miss. Oct. 2, 2009) (quoting *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002)); *see also Spikes v. McVea*, No. 19-30019, 2021 U.S. App. LEXIS 27612, *1 (5th Cir. Sept. 14, 2021) (noting the qualified-immunity inquiry must focus on the role of each defendant, not the collective action of a group of

defendants) (citing *Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *Dyer v. Houston*, 964 F.3d 374, 382 n.6 (5th Cir. 2020)). Smash is not individually liable for the conduct of other government officials. *See generally Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.").

That said, "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998); *see also Pena v. Givens*, 637 F. App'x 775, 782 (5th Cir. 2015) (unpublished). In *Lewis*, the Supreme Court emphasized that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)).

Not only must the executive action be conscience-shocking, but it must also be made with subjective "deliberate indifference." *Sanchez v. Oliver*, 995 F.3d 461, 473 (5th Cir. 2021). "'Deliberate indifference is an extremely high standard to meet.'" *Id.* (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). In *Pierce v. Hearne Independent School District*, 600 F. App'x 194 (5th Cir. 2015), the Fifth Circuit stressed:

> A due process violation results from "*deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citation omitted). As the Seventh Circuit has explained, deliberate indifference entails "conduct that reflects complete indifference to risk—when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of

> death." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.
> 1991) (citations and internal quotations omitted).

*Id.* at 198 (emphasis in original). Plaintiff cannot demonstrate conscience-shocking, deliberate indifference with respect to Smash because Plaintiff fails to identify anything Smash did to cause his or her alleged injuries.

In *Williams v. Barbour*, the district court set forth the pleading requirement for alleging a constitutional claim against a government official in his individual capacity in the Fifth Circuit:

> The generic pleading requirements of [Rule] 8 govern suits against individual defendants in their official capacity. Oliver need only provide a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Plaintiffs suing government officials *in their individual capacities, however must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation.*

2009 U.S. Dist. LEXIS 98114, *7 (emphasis added); *see also Spikes*, 2021 U.S. App. LEXIS 27612, *1 (noting the qualified-immunity inquiry must focus on the role of each defendant, not the collective action of a group of defendants); *Dyer*, 964 F.3d at 382 n.6. That pleading standard is consistent with *Iqbal* and *Twombly*, requiring "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Williams*, 2009 U.S. Dist. LEXIS 98114, *7-8 (quoting *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)); *see generally Petersen Indus.*, 2011 U.S. Dist. LEXIS 13338, at *3-4 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Iqbal*, 556 U.S. at 678); *Twombly*, 550 U.S. at 570 (requiring plaintiff to plead "enough facts to state a claim to relief that is plausible on its face").

The Amended Complaint does not identify any of Smash's conduct that may have caused an injury. That pleading deficiency is fatal to Counts I and II of the Amended Complaint against Smash. *See Williams*, 2009 U.S. Dist. LEXIS 98114, *10-11 (finding general, conclusory allegations of participation in a conspiracy was insufficient to demonstrate with "factual detail and particularity" how each defendant violated the plaintiff's constitutional rights). Therefore, those claims should be dismissed against Smash.

### III.    Plaintiff does not plead a MTCA claim against Smash individually.

In addition to the arguments raised in the City of Jackson's Motion for Judgment on the Pleadings, the negligence claim should be dismissed as to Smash, individually, for an additional reason. To the extent Plaintiff asserts Count III against Smash in his individual capacity—*see generally* Am. Compl. [Doc. 51] at 16 (¶ 65)—it should be dismissed because Plaintiff pleads Smash "acted in the course and scope of [his] employment." *See, e.g., id.* at 86 (¶ 410); *see also City of Clinton v. Tornes*, 252 So. 3d 34, 37 (Miss. 2018) ("While the MTCA permits a government employee to 'be joined in an action against a governmental entity in a *representative* capacity if the act or omission complained of is one for which the governmental entity may be liable,' the MTCA makes clear 'no employee shall be held *personally* liable for acts or omissions occurring within the course and scope of the employee's duties.'") (quoting MISS. CODE § 11-46-7(2) (Rev. 2012)) (emphasis in original); *Dearman v. Stone Cnty. Sch. Dist.*, Civ. No. 1:13-cv-267-HSO-RHW, 2014 U.S. Dist. LEXIS 37489, *19-20 (S.D. Miss. Mar. 21, 2014) ("The MTCA generally provides that employees of a governmental entity who act within the course and scope of employment are not personally liable for injuries arising from their acts or omissions.").

### CONCLUSION

For the forgoing reasons, the Court should dismiss Counts I, II and III against Smash.

RESPECTFULLY SUBMITTED, this the ____ day of May, 2022.

_____
TERRIS C. HARRIS

Terris C. Harris (MSB #99433)
THE COCHRAN FIRM-JACKSON, LLC
197 Charmant Place, Suite 2
Ridgeland, Mississippi 39157
Telephone: (601) 790-7600
tharris@cochranfirm.com
*Counsel for Jerriot Smash*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May ___, 2022, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which served a copy of the foregoing on all counsel of record.

_____
TERRIS C. HARRIS
